May it please the court, my name is Eric Cartl. I represent the appellants, the mother, maternal grandmother, and the two grandchildren. Associate Justice Lee Brandeis says we desire respect for the law. We must first make the law respectable. In considering reversal of the lower court decision, we ask the court, as typical in cases involving allegations of government violating the law, that the court first determine what the law is, and then whether the government violated the law. The government just can't come in and say, this is what we did, it's okay, right? So a few preliminary points. The federal law we want defended are basically found in the addendum. It's the Indian Child Welfare Act, 39 through 40. The regulations which, where the agency directs this court to give maximum protection for parental rights under federal and state law, at public law 280 at addendum 42. The Indian Child Welfare Act is a congressional act signed by a president. It was a rare exception to sort of race neutrality, but only in specific circumstances does it apply, because it protects the rights of children, parents, grandparents, and others. In juxtaposition, the Minnesota Department of Human Services Indian Child Welfare Manual was a result of a decision by the federal agency. Children, or advocates for children, parents, grandparents, and others weren't invited. The document was drafted not according to a rulemaking process, but it's a manual, but still as the force of law against the counties. As a result of this process, unlike the congressional process, we have a lopsided document, which is disrespectful of federal law. Now let's get to the argument. Under the Indian Child Welfare Act, the Secretary of Interior, under addendum page 40, we have section 1918. There, the Secretary of Interior receives the petitions from public law 280 tribes, and virtually all the tribes of Minnesota are public law 280 tribes. And the petition is considered by the Secretary of Interior, and there are criteria to be applied. And then the tribes, under section 2 there, A2, can give full retrocession or partial retrocession. As the Ninth Circuit cases have indicated, there's exclusive jurisdiction to be granted. Referral jurisdiction could be granted. Referral jurisdiction means the state court has referred the case to the tribe. And then there's this thing about concurrent jurisdiction, as best I could figure it out. That's when both parents agree. So we compare that to page 36, and we look at the note on page 36, which is the page 25 of the manual. And the note is very critical because it reflects a fallacy. Imagine a state agency document including fallacies, and there are at least two of them. Here in the note, jurisdictional conclusions, specifically those regarding concurrent jurisdiction under public law 280, do not include the Red Lake Nation Reservation and Bois Forte Band of Chippewa or any other tribe over which public law 280 jurisdiction was retroceded by the state of Minnesota. So judicial jurisdictional conclusions, I mean, what they're doing here in this document is saying that the state agency transfers all the Indian children to the tribal social service providers in the state of Minnesota. So what they're transferring to these dozen and a half or so public law 280 tribes is to be determined through a petition process to the Secretary of Interior. So I know the Secretary of Interior isn't here, but this is a federal court and we have equal branches, and it's very important that the federal court preserve the prerogatives of the Secretary of Interior to make these conclusions. Another fallacy, the phrase, child is a ward of the tribal court. Now that's 1911, which is also in the appendix or addendum 39. The fallacy there is, once the tribal court has issued a court order, it's a ward of the tribal court. And the circular reasoning is once that first order is issued, then the state agency has to transfer the case to the tribal court. But just because a tribal court has issues in order, this court would know, doesn't mean it has jurisdiction. The Shakopee Mdewakensu community is a public law 280 tribe that must apply to the Secretary of Interior to obtain exclusive jurisdiction or referral jurisdiction, where all it has is concurrent jurisdiction, which means the parents must agree. And so the Secretary of Interior prerogatives have been violated in a document that was negotiated between the tribes and the agency to Now why does that matter? It matters because my client, it was subject to Shakopee Mdewakensu community tribal court, and that resulted in the seizure of the children for a while, and they're still under court order. CH is under tribal court order Shakopee, and CP is tribal court order in Red Lake Nation. Those facts are covered in the brief. But from a child's perspective, so the child has rights in the Indian Child Welfare Act. If you live off the reservation, let's imagine a teenage child. If you live, that teenage child lives off the reservation, the teenage child can convince one of the parents to object. And if it goes through court, there's no transfer under 1911, because under 1911b, if one parent objects, there's no transfer. So why can't a child advocate to a parent to exercise that right to object and stay court? Can I go back to a basic with you? Sure. If the child here, in this case, resides or domiciled on the reservation, the tribal courts have exclusive jurisdictions, right? No. 1911 says that. Tell me what's wrong. Because there's an exception, and the exception, according to the Ninth Circuit, Doveyman and the All you have is concurrent jurisdiction. In order to get referral or exclusive jurisdiction, you must petition the Secretary of the Interior, which was my original point. And so, remember, when my friends representing the government, the tribe, they come back and say, oh, you got to look at these cases. No, no, I'm relying on statutes. And I've read to you the statute, 1918, that says there's a process for a public law 280 tribe to reassume jurisdiction. And that process, when read with 1911a, which Judge Benton, you mentioned, the Ninth Circuit has interpreted exactly the way I'm stating it. Counselor, even if it's only concurrent jurisdiction, they still had jurisdiction, did they not? Concurrent jurisdiction uses a different phrase here, and that's what we use. Here, this is used to acknowledge cases where both parties consent. My client has objected every step of the way, and there are rights under the Indian Child Welfare Act, under 1911b, that say it won't be transferred absent parent consent, or whatever the exact words are. But parent consent is required for the transfer. So the agency has attempted to obliterate a parent consent required to transfer these tribes to public law, to transfer these cases of public law 280 tribal courts. On the question of exclusive jurisdiction for the non-public law 280 tribe involved, Red Lake Nation, we can see the Red Lake Nation has exclusive jurisdiction, but CP never resided on the Red Lake Nation. Then this oddity, when I did the habeas corpus petition to get CP out of the jurisdiction of the tribal court, and then we went through that process, because he wasn't a member of Shakopee, he was a member of Red Lake, resulted in a transfer from Shakopee court to the Red Lake Nation's tribal court, which is also troubling. So the parent has a right to object in a state court proceeding, and when we look at the Indian Child Welfare Act, we know why that has to be in a state court proceeding. It's such a monumental thing having the case transferred to the tribal court because of tribal preferences for Indian relatives. In this case, of course, our position is the maternal grandmother and the two grandsons should be raised by the same person. Colleen Dietrich has custody of one grandchild, but not the other, because of different results in the tribal court. I'm a notch behind you. Is this case moot as to CP? No, there's still a tribal custody court order, and so the tribal custody court order has awarded custody to my client. It's true the administrative case has been closed, but the point is that can be reopened. It's a very important aspect for my client. Well, why isn't it moot? Because the child's even with who you want it to be with, right? CP? Tell me if I'm wrong. But the case, but because of a court order, the court order needs to be vacated. There shouldn't be a court order. The court, my client's right. You know the result's good for you, you don't want the order, right? That's what you're saying. Well, there are two aspects. One is the Supremacy Clause, but also there's a civil rights action, and my clients, all my clients have been damaged in some way, and we want to protect their rights. These are children's rights. As this court knows, recently in Stanley v. Finnegan, the Fourth Amendment prohibition against unreasonable seizure, that can be brought against CPS agencies by children. So this whole process, from the children's perspective, was unreasonable. My other point is, under the Indian Child Welfare Act, before a transfer from a state court to a tribal court, there's an issue of showing good cause to the contrary. This gives an opportunity for the children, if they can speak for themselves, to speak out, the parents, grandparents, others. Imagine someone stationed at a southern military base. Under this rule, they wouldn't get to object. Counsel, before you go further into your rebuttal time, let me ask you one question. Was your 14th Amendment argument raised below? The due process claims were raised below, and so we have the Supremacy Clause claims, and we have the 1983 Civil Rights claims, and the All-Star case, which involved both due process and substantive due process claims regarding child protection services apply, as well as Stanley v. Finnegan, which was decided in August of last year. Thank you. Good morning, Your Honors. May it please the Court, my name is Aaron Winter. I'm here on behalf of the Commissioner of Human Services, Tony Laurie. I'd like to begin a step back here and have a little bit of background. The Supreme Court has explained this in the Holyfield case, which is still very good law, although slightly older than 1993, it's 1989. It says that Igwiz passed due to rising concern in the mid-1970s over the consequences to Indian children, Indian families, and Indian tribes of child welfare practices, that this is me summarizing, resulted in a large movement of Indian children through child custody proceedings and adoption proceedings from Indian tribes to states. And that's memorialized in the policy sections of ICWA, which are 1901 and 1902, I believe. And so, essentially, that is very inconsistent. It's actually diametrically opposed with what the plaintiffs are asking for in this case. What the plaintiffs want in this case is they very desperately would like to read section 1911 as setting forth a structure in which Indian child custody proceedings must begin in state court and then they can only move to tribal court in the event that both parents assent to that transfer. So what I'm going to call that is presumptively state jurisdiction, because I think that's what it is. It would be very odd, and there's an initial reason for skepticism of the plaintiffs' position in light of the policy purposes of ICWA by accident, apparently, if Congress created a presumptively state jurisdictional scheme when it intended to prevent this move of children from tribes to states, and it intended to do that by getting tribal courts more involved as opposed to less. In other words, providing, in most situations, actually in all situations, at least presumptive tribal jurisdiction. It's not every other quotation. It depends upon whether the child is on the reservation or not. What's the status of these children? What I can tell you is we are on the Rule 12 stage. What the district court found was that the records show that both C.P. and C.H. were domiciled at the Shakopee Bidewalkin Sioux community at the relevant time, which is when the child custody... in his reply brief, at least that C.P. was, in fact, not domiciled or residing on the reservation, on a reservation at the relevant time, and so to the extent that there is some ambiguity or some factual dispute about that on the Rule 12, that's why every provision of 1911 is addressed in the commissioner's brief, and I do think maybe this is a good time to note, in service of the goal to create this So they like one thing about 1911A. They like the other federal law provision through which the Ninth Circuit has decided that Public Law 280 can be routed, but then they like the thing in 1911B that says in any state court proceeding, which they read as meaning that there has to be a state court proceeding, which of course it doesn't say. So that's sort of... there's a lack of clarity there in terms of the analysis, and this is... it's really just sort of a general expression by the plaintiffs of the kind of structure that they would prefer to see. And then their argument with the hook for liability with the commissioner is that the manual that contains an inaccurate or somehow purports to expand upon what ICWA says in granting tribes more rights than are granted to parents. But I want to be very clear... Let me ask you about that, counsel. Would you agree with me that parental rights that are subject to being determined in a custody proceeding are protected by certain 14th Amendment rights under the U.S. Constitution? I would not agree with that particular phrasing, and here's why. As we know from substantive due process case law, we can talk about in the parental rights context either actual cases that talk about parental rights, and those have various tests that I'm at risk of having my children taken away from me. Do I have 14th Amendment rights that are at stake? I think that it depends... What I'm getting at, counsel, is I'm wondering if a non-Indian, non-tribal member can have... can be forced by a statute into defending those rights in a foreign jurisdiction. The answer to that question is yes. And the reason is that in order to have a substantive due process right, it has to be according to the Supreme Court's... I'm going to get the language a little bit wrong, but something that is so important and so fundamental in our nation's history that liberty and justice would not exist were it sacrificed. And so the particular right... There's also case law discussing how in order to avoid expanding substantive due process unduly into a judgment doctrine, it has to be very specifically described. And so the right that's at issue here and that is alleged here in the constitutional claim, which is actually not before the court, but if it were, the right that is alleged here is that there is some right for forum selection, some fundamental right to forum selection that a parent whose child is subject to a child custody proceeding has. And there's no authority for that whatsoever, especially not in substantive due process case law. And that's not surprising given that that is not one of the fundamental rights according to the test that the Supreme Court has articulated. But as long as we're on the constitutional point, I do also want to make the... be very explicit about the fact that that claim is not before this court. It was not raised before the district court. If you look at the complaint, the motion to dismiss briefing before the magistrate, also the objection briefing before the Article III judge, the district judge, you'll see that that issue wasn't discussed and that's also very clear in Judge Montgomery's order. Now with respect to the manual, the manual doesn't purport to change anything about ICWA. At least the portion of it that we're talking about, the only thing it's doing is trying to provide a practical guide that says here's how you apply Section 1911. And it does that successfully and it accurately states what is to occur under 1911. I think, you know, I'll briefly sum up what that is. But it says regardless of the residence or domicile of a child, you have that phrase in there and that phrase doesn't fit very well with the general ICWA approach of where they are. Well, it does fit with it if they're a ward. And so what Mr. Kerr... Yeah, but Possessions 910 is not always true. He's saying you get declared a ward off the bat and then this basically the trial court unlawfully grabs the child, therefore they become a ward and therefore there's a circular thing. Correct. That is not what the manual says. So what the manual says is if they're already a ward. Well, that's a reading of the manual. How is that reading not right? How is the reading... Yeah. Because it says, the relevant section of the manual says child is a ward of the tribal court. And then it goes on to say any proposed child custody proceeding involving an individual Indian child who is a ward. So it can't be that the child custody proceeding being referred to by the manual is the one that makes the child the ward. The child has to be the ward already. And so that is the situation in both ICWA and the manual in which the domiciliary or residency status doesn't matter. And then it goes on to say, assuming they're not a ward, if they are a resident or domiciliary of a reservation then the rest of 1911A applies. It's exclusive jurisdiction unless we go with the Ninth Circuit where Public Law 280 applies. But here's the important point of Public Law 280 applies and assuming that 1911A applies under the facts of this case and the domiciliary status of the children in this case. Walker v. Rushing in 1990 of this case said, Public Law 280 does not preclude concurrent tribal court authority. The Venati case that Mr. Rushing made rejects the proposition that the tribe loses any jurisdiction unless they go through the reassumption procedure under 1918. And that was the only argument made below. And the response today has been, well, concurrent jurisdiction, they might have concurrent jurisdiction, but concurrent jurisdiction requires the agreement of both parents. There is absolutely no authority for that. The only thing that mentions some kind of parental input is 1911B, which as I mentioned before, has nothing to do with the residents and domiciliary status that triggers 1911A. And then if we're in 1911B, really there's two points there. One, it doesn't say there has to be a state court proceeding. What it says is, to the extent a state court proceeding exists, here's the process for transferring it to tribal court. And we know that no state court proceeding has to exist there, not only from the plain language, but also from the fact that the Supreme Court in that same Holyfield case I mentioned to open my argument said that 1911B creates concurrent but presumptively tribal jurisdiction. So again, it cannot be the case that the scheme the plaintiffs are interested in, presumptively state jurisdiction. It can't be the case specifically under the law that the statute provides it. It can't be the case under the policy that Congress was trying to effectuate that 1911 provides it. And I see my time is over. I would ask the court to affirm the dismissal of this case as to the Commissioner. Thank you. Thank you, Mr. Winner. Mr. Andreen. Good morning, Your Honors. My name is Jim Andreen. I've asked for a short minute to make three quick points. First, as Scott County must, it defers to the Commissioner's argument that Mr. Winter has provided, but we agree with his interpretation that the Indian Child Welfare Manual comports with federal law. Second, that Scott County did not place a hold nor transfer anybody in this, despite what it says in the complaint, because the exhibits in the complaint, specifically Exhibit 3, states that the Shakopee Police Department placed the hold, and Exhibit 5 shows that jurisdiction was already in the tribal court. What Mr. Cardall wants you to suggest is that somehow Scott County was supposed to initiate an action. There's only two types of individuals who can affect a child's custody, and that's a police officer and a judge. And the police officer can't initiate a proceeding in this case. Thank you, Your Honor. Thank you, Mr. Andreen. Thank you, Your Honors. Richard Duncan. I am appearing on behalf of the Shakopee Sioux Tribal Court and its Judge John Jacobson. The Red Lake Bayon Tribal Court and its Judge Mary Ringhand have also authorized me to present this case. I will address four topics. First, the sovereign immunity of the tribal court defendants. Second, the appellant's waiver of their only remaining claim against the tribal defendants. Third, the mootness, Your Honor, Judge Benson, the mootness of appellant's claims as to CP. And finally, the Shakopee Sioux Court's jurisdiction over CH. Sovereign immunity is very simple. Under this court's jurisdiction, appellants and institution share the immunity of the tribe. And appellants plead no waiver of that immunity. Therefore, the district court's decision to dismiss the tribal courts as institutional defendants should be affirmed. There's an ex parte young, though, possibility here, right? Ex parte young would only apply in theory as to the tribal judges. And so what I'm saying is that the tribal courts have immunity. I don't think Your Honor needs to get to ex parte young in this case for the following reasons. The only remaining claim stated against the tribal defendants, count one of the complaint, is asserted under section 1914 of ICWA. But the appellants waived that claim. In response to the tribal defendants' motions to dismiss the section 1914 claim, appellants neither cited nor defended the claim in the district court, and they did not cite it in their opening brief to this court. It's waived. It's also facially defective. Under its own terms, section 1914 applies to foster care placement, quote, under state law, not tribal law. So ICWA does not create a cause of action against the tribal courts or the tribal judges. So between the sovereign immunity of the tribal courts and the appellant's waiver of their only remaining claim against the tribal defendants, those two points of law are sufficient bases standing alone for the court to affirm the dismissal of the claims against the tribes. As Judge Benson noted, appellant's claims related to CP, the Red Lake tribal member, are moot. What about some Your Honor, here's my point on that. It's in the appendix at page 510. The order granting the transfer of custody of CP, it's agreed to. It's not done unilaterally or over the objection of the two appellants. It is agreed to by the two appellants. So when you commit to that process, there's no ability to challenge it. It is moot. It is resolved. And it's resolved, as Your Honor noted, the way that the Counsel, why wouldn't the court have continuing supervisory authority over that order? Well, I suppose, and I will say the Red Lake tribal court, I'm arguing for them. They're not my client. But I suppose that in the way that any court order of this type could have continuing authority, perhaps that would arise. I guess I view the more critical point as the agreement of the appellants. But you're saying a waiver. Sounds like waiver, you're saying. If it's not moot, it's waived. I guess I'll phrase it that way. I do believe it's moot, but Your Honor takes my point. And finally, the Shakopee tribal court had jurisdiction over CH. CH is the Shakopee tribal member. A case was initiated in January of 2015 based on a child welfare officer of the tribe seeking a petition for custody of the children due to neglect. Judge John Jacobson found the children to be in need of protection, and he provided social services for the parents, didn't take the children at the time, provided social services to the parents. And all this happens before Scott County or the Shakopee Police Department get involved. At the time, okay, the district court order states in footnote 4, CH and CP were domiciled on the Shakopee reservation. And Exhibit 3 to the complaint, which is a 72-hour hold that Mr. Andreen mentioned, it's hard to read, but the address of the parents is a reservation address. And there's no allegation in the complaint that the children were not So what I would say, Section 1911A applies here. There's concurrent jurisdiction, at least. And where there was no state court proceeding, there was a pre-existing tribal court proceeding, there's no reason for Scott County to initiate a redundant concurrent child protection proceeding. And the Shakopee court, I think, served the children well. Please affirm the district court, Your Honors. Thank you, Mr. Duncan. Mr. Cardall, rebuttal. Yes, Your Honor. We're back to the circular reasoning with the Secretary of Interior's prerogatives. Public Law 283 must petition for referral or exclusive jurisdiction. And the answer on Judge Benton's question, child is a ward of a tribal court, well, the follow-up question to expose the circular reasoning would have been, what do you mean by ward of a tribal court, then? Normally you think of ward of a tribal court as a result of a court order. And so what happens when the state agency gets involved with this kind of verbal subterfuge? What do we do? And I think what we have to do is just understand that the hermeneutic keys to reading this manual are the fallacies I described. And then you go through the rest of it and you say, well, actually what you were doing was replacing what the Secretary of Interior intended to do. And that is, the Secretary of Interior has the power upon a petition from the Shakopee Mdewakanton Sioux community to grant exclusive jurisdiction. But even then, there wouldn't be jurisdiction beyond the borders of the reservation because that's what it says in 1911A. So you have two problems. One is the problem of Shakopee doesn't have any jurisdiction when a parent objects, the Shakopee tribal court, and then Red Lake Nation doesn't have any jurisdiction over children that are non-residents. And so I think the simplest way to proceed is to recognize that the state agency was attempting in a very indirect, sort of sophisticated way to grant powers to the 18 or so public law 280 tribes in Minnesota so that they could have tribal court jurisdiction over child custody matters without petitioning the Secretary of the Interior. And they even went further because they gave basically jurisdiction beyond the reservation boundaries. So what do you do with an agency like that? What do you do with a document like this? Well, we have to read it as it reads, not as the defense has suggested. It's almost like there's a shrinking violet defense. I mean, when this became the Indian Child Welfare Manual with the force of law, there was a lot of training. The state agency is responsible for training all the county officials, those in Scott County. They're involved. My client is challenging prospectively the state agency and the county where the children are that this is preempted by the Supremacy Clause, by the Indian Child Welfare Act. The regulations that implement the Indian Child Welfare Act, which include and I think the agencies have to be careful about providing instructions to federal judges, but it says 23.106 addendum 41, under section 1921 of Indian Child Welfare Act, where applicable state or other federal law provides a higher standard of protection to the rights of the parent or Indian custodian than the protection accorded under the act, ICAWA requires the state or federal court to apply the higher state or federal standard. I mean, talking about a federal agency saying, hey, these parental rights are important. And so how do we reconcile this argument? Well, concurrent jurisdiction exists everywhere and the state agency can transfer these children back to the reservation of the tribal court with the parent's right to object. And again, there's a question of the 17-year-old child, right? 17-year-old child's living in Minneapolis, member of one of the northern tribes. Really, a 17-year-old can't come into state court and object to the custody case going up there? It doesn't add up. And when a state agency does something that doesn't add up, we need the federal court to act. Thank you.